et al. Oral argument, 15 minutes per side. Mr. Briskeet for the appellant. Good morning. Good morning, your honors. May it please the court, Paul Briskeet for the appellant, Karim Codrington. Three minutes for rebuttal, please. Very well. Your honors, I have three main points I want to make today. Two on the first issue in the brief, which is the district court's misapplication of the Rule 56 standard. And then I have one point I want to make on the second issue in the brief, the timeliness of the search and seizure claim. In particular, I want to say a word about our continuing trespass argument. But starting with that first issue, the decision below reads as a roadmap to a denial of summary judgment based on the factual issue of whether the narcotics were fabricated. The district itself spends paragraphs, indeed pages, walking through specific pieces of evidence that are probative as to whether the narcotics were fabricated by the officers here. The district court highlights the fabricated evidence photo, the sporadic body cam footage. It notes opportunities in the video evidence, where the officers could have fabricated the evidence. It notes that they're communicating on their personal cell phones. After going through these specific pieces of evidence, the court pivots quite abruptly and says, defendants highlight facts that undercut Codrington's narrative. And then it proceeds to have a paragraph of what it saw as countervailing evidence. That sort of on the one hand, on the other hand analysis is the wheelhouse of the jury. I think this is a textbook example of when there's a disputed issue of fact. The district court also made some global comments about the circumstances here generally, in addition to highlighting the specific evidence that I just walked through. This actually brings me to my second point on this issue, the global comments. The district court called the circumstances here and the officer's conduct suspicious. That's the term the district court uses. We highlight that in our briefs several times. I want to pause and highlight and emphasize its evidentiary value. Calling this suspicious is an acknowledgment that our inferences, or the inferences we'd be asking a jury to make from the evidence are reasonable ones. Why characterize everything that happened here as suspicious? Because the district court is acknowledging that someone could look at what happened here and believe that the misconduct that my client alleges is true. So between just the district court's analysis on its face- How far does that go? How far does kind of general suspicion about kind of misbehavior go with respect to, I mean the fabrication claim is very specific, right? It's just meth is fabricated or the big bag of marijuana, whatever it is. Yes, it's suspicious. Yes, there's kind of, you know, why is the body cam not on? You know, what is this going on with this picture that has stuff that's definitely not in this case? It's all kind of, I mean, is that, do we just take all of that and say that's probative of whether this evidence is fabricated? Yes, your honor. The term suspicious is a gloss on all the circumstances here, all the specific pieces of evidence. I certainly agree that just vaguely calling circumstances suspicious is not- I mean, I think the district court was thinking, yes, what's going on here is kind of shady, but I don't have anything specific on the marijuana, you know, and so how do I know, you know, where's the fabricate, what's the evidence of the fabrication? And I'm not saying it's correct, I'm just saying I think that's where the district court was going and I guess I'm curious as to, you know, how far does kind of the entire thing being suspicious go when you're talking about specific instances? The direct evidence is Mr. Codrington's testimony and then the circumstantial evidence are the things I walked through earlier, but, you know, specifically the fabricated evidence photo is the term I'll use for it. I can scarcely think of stronger evidence short of actually capturing on video the officers planting the evidence or having sworn testimony that they did. I think that's the main piece of evidence that's specific from which a reasonable jury could say if those, if some of the items in the photograph are capable of doing that, they're capable of fabricating other evidence. Yes, that's the inference. So is your fabrication of evidence claim primarily on the picture or is it primarily on the meth? I guess I had the feeling the meth was much more important because the picture, whatever it is, you know, in the end it's sort of, you know, it's conceded that that's, that could be an error or whatever, but the meth is really what gets you in trouble, isn't it? And that's where the fabrication would be the strongest. Absolutely. It's the meth itself, not the picture, but the substantive drugs that are in the picture and the large bag. Well, but, but in terms of what the officers, you know, in the end say that they found, that is the meth. There are a couple of things here that they clearly, you know, it's not even claimed now that that's what they found, right? The magazine and the other gun. Okay. Yeah, your understanding is correct. Okay, so could you focus for me then for a minute on what you see, if any, as direct evidence of the fabrication of the meth? Mr. Codrington's testimony and in the video he says, as the, as Officer Dolak goes to the back of the car, he, Officer Dolak pulls out the baggie and on video for a jury to judge his credibility, my client is saying, that is not mine. That is not mine. You can test my DNA for it. I mean, that's a straight up or down credibility judgment that a jury gets to make. Okay. That's in its direct evidence. Is it claimed that he was already searched and therefore they would have found it if it had been on him? Yes, Your Honor. So you're highlighting some of our circumstantial evidence that goes to that, which is they've searched him. Okay, for me it's a little different of circumstantial as opposed to general suspicion. Do you have any, any particulars about the search, the fact that it was of his person and a reasonable jury could infer that if someone's person is searched three times and they have narcotics in their clothing, the searching officers will have discovered it? So on this issue, I think the district court's opinion itself, the one, on the one hand, on the other hand, nature of it is screams that summary judgment should have been denied on this factual issue. And then when you compare to what was at issue in Davis, um, I think the district court clearly erred in granting summary judgment. How do you deal with a one year statute of limitations, which to me appears to bar, uh, most of the claims, uh, the malicious prosecution claim, the, uh, false arrest claim. Uh, why, why, why does, why does not the one year statute bar it? So certainly not the malicious prosecution claim. No one, as far as I can tell, I'm not the district court, not the defendants are arguing that the malicious prosecution claim. Okay. Yeah. False arrest. Uh, you have, I guess, a search and seizure claim. I mean, you have a lot of, a lot of claims that he knew about, uh, at the time and that were not told until the prosecution was dismissed. So why, why aren't, why aren't any of these claims barred by the one year statute? So to walk some malicious prosecution claim isn't, um. Okay. Fabrication. Fabrication isn't either. Okay. But the other ones I think are. Tell me why the other ones are not barred by the one year statute. Specifically the search and seizure claim. We've advanced several arguments as to why it's, uh, it didn't accrue. And, and our first argument is that under the continuing trespass doctrine, um, which the Supreme Court has a growing body of case law discussing that for, um, 1983 accruals, we need to make common law analogies and look to the common law to determine when the claims accrue. He searched. So why is there a continuing trespass after, after the search of his person ended? Because his car was seized when the officers boxed it in and continued to be seized when it was impounded and processed. I thought the search and seizure was about his person as opposed to, as to search of his automobile. It's both, Your Honor. There are allegations in the complaint. Okay. How about the search of his person? You would agree that's barred by the one year statute. Would you, would it not? I think the search and seizure claim at this point, our argument would limit it to the car. Okay. So you concede that the search of the person claim is barred by the other concessions. How about, uh, whatever the other claims are. I'm struggling to, where is the search of the car an issue? Like, I guess I didn't really see that. I mean, there's a, there's something in the complaint about him being boxed in or whatever, but I don't, there's nothing in the complaint about that. They see something from the car or what? I mean, they seized the car itself, Your Honor. I mean, the, the fourth amendment really, uh, I just don't see that. Where is it argued below? Is it? So in the complaint, we have the factual allegation that the car was trespassed. You don't have a claim. I mean, you can have statement of facts, but that doesn't establish a claim. That's all. I didn't see a claim either for the search of the car. And I didn't see argument. We don't have to plead legal theories, Your Honor. We have to plead. You have to plead. You have to plead claims. And I think we have the factual allegations to support a search and seizure claim for the car. I mean, I don't see the continuing, when's the continuing trespass argument made? It, it wasn't made below, Your Honor. When was that made? It wasn't made below, Your Honor. I mean, I don't understand. So what did the district court do wrong? The district court, on the issue of whether. Did you dismiss the case on a theory that she had no idea existed? This court has held that we're an issue, the district court decides an issue, it's preserved for appeal. And the district court decided the issue of the timeliness of the Fourth Amendment search and seizure claim. And so we are advancing an argument on, on that issue. I mean, it just seems like you're sandbagging the district court, really. I mean, if you don't tell the district court, hey, we have a continuing trespass theory. It's a pretty big deal, by the way. It's a different theory. It's like, and I'm not saying it's a bad theory. I'm saying it would have been nice for the district court to have been aware that, hey, there was a continuing trespass here. I mean, I think the reason is, honestly, because there really isn't a claim about the search of the car. Like, I just, I'm struggling to see that. Okay. I think we have the factual allegations to the procedure for the car. I'd also add on that. I don't agree with the premise that necessarily the substantive claim has to map on to the basis for accrual, one for one all the time. So if you take false arrest as an example, what triggers the accrual of a false arrest claim is when process is brought against the person. But of course, process being brought is not an element of the claim. It's just, it's a separate fact in the world that triggers accrual. And so I don't think we need necessarily, but I think the facts are in the complaint. I just, I would add, no one is arguing that the issue, that our arguments are waived. We're in the realm of forfeiture here. I see my time has expired and I would just, I think the arguments are properly before the court and the court certainly has discretion to reach them if it wants to. Okay. Any further questions, Judge Box? All right. You'll have your three minutes rebuttal. May it please the court, Bill Brammel on behalf of the FLEs in this matter, opposing counsel. Just to jump right into things, you know, I think you all have hit on, I think the panel has hit on a number of issues in this case. One of them that I'd like to address up front is that of the vast majority of the claims that are being argued today were not argued to the district court. Sandbagging is a good word for it. We've argued in our papers that they've waived these claims. Continuing trespass is a perfect example. Do you agree that the fabrication claim is timely, the malicious prosecution claim is timely, the conversion claim on the money, that's timely, right? So the judge dealt with those issues outside of the context of statute of limitations. She did not rule in statute of limitations on those cases, or on those claims. So I do think that we have substantive arguments. You said the conversion claim was timely, I think. Specifically. I believe she did, Your Honor. And I think on the malicious prosecution and on the fabrication too, right? She dealt with those up front outside of the statute of limitations context, purely on the legal issues about whether or not the plaintiff had put forth affirmative evidence to put a case to the jury. The fabrication of the meth evidence, I'd like to know why there isn't a question of fact. The plaintiff says that he had no meth on his person. The police searched him three times, his person, and found no meth on him. And then, miraculously, once he's transported to the police station, he gets out of the car, and the officer outside the body cam says, oh, there's meth in his seat. It must have fallen out of one of his pockets. I mean, isn't there an issue of fact? One, that he denies that he ever had meth. Two, he's been searched three times, and then, miraculously, the officers say, I found it. I mean, why isn't there a genuine issue of material fact for that? For a couple of reasons, I believe, Your Honor. First of all, I'll point out, and I didn't go through a full factual recitation, I don't intend to, but I'll point out that when they were leaving the gas station, the officer on the body cam, Officer Dowak, says, he's moving around a whole lot in the back seat. This was suspicion that something was going on, that there was potentially hidden narcotics that he was trying to get rid of before he got, he went and was checked inside his pants, and was checked at the jail to be actually incarcerated. So he's moving around after he's been searched how many times? Your Honor, he was, the first time, he was searched for guns, for firearms. The second time, come on, they're going to find the meth when they search for guns, aren't they? Well, not necessarily. I think it depends where the meth was, and I think there's a suspicion, you know, they didn't go inside of his pants. They petted him down, they searched his pockets, they searched exterior. They did not, I don't want to be too graphic, Your Honor, they did not search inside his pants, they did not search any orifices, they did not search... But aren't those all good factual arguments either way? The analogy, you know, we've all had many, many cases of controlled buys, and they always start out with the police searching the informant, right? And then obviously you go to the jury, and part of your factual recitation and inference is, because I searched him and didn't find anything, then the drugs must have come from the buy. Now that's not definitive proof, but it's at least pretty decent evidence. So you can always contest it, but when we're looking to say, is there an absence of evidence, isn't the fact of the search by the officers and the fact that they did not find anything, that's at least some evidence that's beyond just his pure statement. Well, a couple points there, Your Honor. On the controlled buy videos, they absolutely do that. Often in the controlled buy videos, they're buying larger quantities of drugs than what you might necessarily fit in your pocket. So a small pat-down like that is going to tell you that you don't have a couple pounds of marijuana on your person, which you then purchase in a controlled buy. In this circumstance, we're talking about a very small quantity of methamphetamines that would be very easily concealed underneath your pants. I'm not suggesting that they would have found this during the pat-down. I think that's the reason that it was placed in the car at that time, because he knew that there would be a full search that would take place when he got to the jail and was checked in. He was handcuffed when he was put in the car, was he not? I believe he was. Yes, he was. But it's noted on the body cam that he's moving around. Second of all, I would note, there have been a number of references to... It's noted on the body cam, but it's not on the body cam, right? I mean, he says it. So when he's leaving the gas station, I believe it's 7th and Algonquin, the officer says on the body cam, he's moving around in the back seat. He says it, but we don't see him moving around. No, the body cam doesn't cover his movement in the back seat. And he's handcuffed, right? He is. Hands behind his back. That's a factual evidence. I don't know how he's hiding drugs when he's handcuffed behind his back. It doesn't seem very plausible, that's all. Well, Your Honor, my suggestion would just be that they were concealed somewhere within his pants. He would not have been searched inside of his pants. Well, okay. Do we know all that? Do we know... Yes. We know that he hadn't been searched on the scene. He'd been patted down on the scene, but he hadn't been searched underneath his pants. He hadn't been searched in many places where narcotics could be concealed. But let me address another point that's related to this. There have been some references to Codrington's own testimony. His testimony wasn't put in front of the district court. The district court was presented with a record on summary judgment that was, frankly, unsupported. Counsel made a number of arguments. He attached hundreds of pages of exhibits to the summary judgment brief, but he did not cite a specific testimony from his client. Was a body cam video presented to the district court? The body cam video was presented. In the video, he says that those drugs are not mine. He's very emphatic. And just right off the bat. And so that was presented to the district court, was it not? It was. So that is his... Well, I don't know if it's testimony, but that's evidence of his position. That statement is absolutely presented to the district court. Well, it was several statements. I mean, it wasn't just one. He was emphatic. And he acted surprised on the video while the officer said, well, this is very interesting. Guess what I found here? Which, to me, that seemed rather suspicious to me. His reaction and also the fact that it was not on the body cam. The body cam was pointed elsewhere when the officer found the drugs. And, all right, that's just a point to be made. A point to be made. And there are a number of points here where the district court didn't pull any punches. I mean, the district court's opinion here, she's very critical of some of the... The district court sets forth the dispute of facts and then says that there is knowledge, which is kind of hard to rationalize. Well, Your Honor, as I read the district court's opinion as it relates to the facts that she's weighing, she correctly recited the facts. I think she recited the summary judgment standard appropriately, and I think she applied it appropriately. And I think she did that because I think the defendants in this case did show an absence of genuine fact on the specific question that she was focused in on. In this case, the court focused on the question of whether probable cause existed to support the charges. In the court's words, if there was a genuine dispute as to whether the officers fabricated the marijuana and methamphetamine, there would have been a genuine dispute as to whether or not there was probable cause. I think she focused very much in on that issue, particularly on the marijuana at the scene. The defendants put forth the absence of fact. It came on Mr. Codrington to come back with something. The body cam evidence actually shows you can see the marijuana being removed from the black zipper bag. There just wasn't a factual issue that he put forward. I think the meth does present a closer call, but I would still argue that he didn't come up with affirmative evidence to support his claims that would lead to not just a possibility, but a probable... What more does he need? He has his own testimony. It's not mine. And he's got the circumstantial evidence that he's searched three times. What more would you require? Well, I know this is a fine distinction. He does have his statement that he made on the body cam, although I think most... What more would you require? I think that if there were... Well, I think he could have potentially cited to the record and shown the judge more specifically the opportunities that the defendants would have had to have plant the drugs. He could have had other record evidence, his own testimony under oath saying that he didn't do this. I mean, I do think the specific methamphetamine, which was a very small quantity of methamphetamine in the backseat, presents a closer question, but I still... I agree with you. I think that's their most viable claim, although I do have questions about the currency as well. Because it's a close question, that ought to go to the jury, shouldn't it? I mean, that's usually the way I look at these things, that if the factual dispute is close, it probably is a jury issue. Your Honor, I think that, of course, closer questions are more likely to be jury issues, but it's still incumbent on the plaintiff to come forth with record evidence to support it. It sounds like he did about everything he could, but okay. All right, let's go to the currents. Can I ask a question about the malicious prosecution? So what's the universe of evidence that we would look at to see whether there was probable cause? Whether there was probable cause to support... On the malicious prosecution claim. Yes, Your Honor. So I think you can look at the... If you look at the circumstances... I mean, everything got suppressed eventually, right? Everything got suppressed, but that doesn't mean that we don't get to consider it for purposes of the civil case. And you can't consider it in the criminal context, but the fruit of the poisonous tree, the exclusionary rule, those don't apply in the civil context. It wasn't argued that they do. So I think in terms of whether or not they had probable cause to proceed with the charges, I think you can look at the fact that he had a machine gun, basically, in the car. It was an AK-47 style 7.62 millimeter rifle. You can look at the fact that he had a large amount of cash in the car. You can look to the marijuana that was in the car that he conceded was in the vehicle. You can look to the marijuana grinder that was in the car. You can look to the fact that he made a furtive movement towards his center console. It was later determined that what he was reaching for was actually an aerosol that would cover the smell of the marijuana. The fact that the dog indicated on both the vehicle and then indicated on the backpack that contained the currency and indicated on the black zippered bag that contained the larger quantity of marijuana that was in the case. I think these all things support, or all of these items support, the probable cause determination. Okay. Thank you. Okay, let's talk about the conversion claim. He says that he had $31,000 in cash, or no, he claims he had $50,000 in cash, and the officers returned $31,000. So the officers said, well, we took the cash, we counted it, it was only $31,000. He says, no, I had $50,000. So you have his testimony against his testimony. Why isn't that issue a fact? Well, first of all on that, Your Honor, I think it's important to provide a little bit of context. On the scene, he said, I have over $10,000. He didn't say the exact amount. No. Later in deposition testimony, he said, well, I had over $10,000. You can look at the evidence photos and you can see the cash. It's not something that can be quickly counted, so it couldn't be counted at the scene. It's a number of bills. It's a large stack. It wasn't counted at the scene. And it wasn't counted at the scene. It was counted... No, it was just returned after they counted it. They said, we counted it. It was $31,000. He said, no, I had $50,000. And the first time that he raised the suggestion that it was $50,000 was in his criminal case, and he could have pursued that more aggressively in the criminal case. He didn't do that, but he raised it after the money was returned. What's important here is that he didn't put forth record evidence to support his suggestion that it was $50,000. He also didn't cite anything in his complaint that has his own testimony that says it was $50,000. Where does the... I thought there was some... He says it's $50,000. Where does that come from? Is there a statement under oath where he says it was $50,000? Well, what we have, Your Honor, is in his deposition, nothing that was cited to the district court. Let me put that forward first. So, nothing that he cited to the district court. There was no record evidence in front of the court that it was $50,000. What does the complaint say when he alleges conversion? Your Honor, I would have to look back at the complaint to see if it says $50,000. I'm sorry, I don't... It says that I had more money than was returned to me? Yes. Okay. Now, we take that, don't we? Okay. So, are we just quibbling about the money, the amount of money that wasn't returned? Is that what you're arguing about? Well, yes. He has to present... If he wants to say that he had $50,000, it's incumbent upon him to, at the summary judgment stage, not at a motion to dismiss stage, to support that with some record evidence. The fact is, he didn't have it. And I don't think he... I believe the reason factually here is because he didn't know there was exactly $50,000. The way that he came up with $50,000 is he attached bank statements from about eight different months showing multiple withdrawals and said this totals up to $80,000. Are the bank statements, are they exhibits to his summary judgment opposition? They were attached in the criminal case as record evidence. The counsel underlying action attached all the exhibits from the entire criminal case. They did not cite specifically to it, did not direct the district court to it at all. What was the context of putting them in the criminal case? After his conviction, when he sought to have the judge in the criminal case return him additional money, he put the bank statements and the evidence in the criminal case because he argued to the state criminal court that he had only received $32,000 back and he thought he had had $50,000. And he attached eight months' worth of bank statements in that case. So the bank statements are in... In the civil case, the bank statements were by reference as record evidence or not? They were not referenced, but they were attached in the appendix that I think was like 600 pages that was affixed to a response. They were not specifically cited in the record. And then his statement, so you're saying the statement that it's $50,000 is just attorney argument or did he actually say that at some point? In his brief, it's only attorney argument. There's no cite to record evidence. In his deposition, he started by saying, well, it was over $10,000, and then eventually he came around to saying he thought it was $50,000. So he does say in his depo, under oath, that it was $50,000. And you're saying that they never put that evidence in front of the district court? Yes, Your Honor. He got from the... It was above $10,000 to $50,000 in his depo. There were multiple answers, but no, it was not put in front of the district court. He didn't submit his deposition in opposition to the summary judgment? It was attached with the other 800 pages' worth of exhibits, but there were no specific... So it was put in front of the district court. Well, there were no specific... The attorney argued it, plus there's evidentiary support in the record from his deposition. I mean, it's there. Well, there was no specific citation to the deposition. Well, he doesn't have to cite it. I mean, if he submitted it... Your Honor, there's case law that says it's not the district court's job to scour the record to look for evidence to save the plaintiff's claims. And when you attach 800 pages in an exhibit... Did the attorney argue orally to the district judge that there was $50,000? I don't believe there was oral argument in this case, Your Honor. So other than the paper record, which we can look at... If I could ask a couple of questions on the money. First, when they got the money on scene, was it in some way sealed and signed for? I mean, you would think that the... If it were not in a criminal context, you would have somebody seal it up and sign across it. From his point of view, he had no agreement with this particular bag. Is that correct? That's correct, Your Honor. Did the officer sign it? It was placed in an evidence bag, and I can't... They had to go and get an evidence bag because they didn't have large enough evidence bags for some of the evidence that was on the scene. The picture that we have in a plastic bag, is that the bag that they put it in at the scene? Yes, Your Honor. Did they seal and sign it at that point? I can't tell you. I don't know if an evidence ticket was signed at the scene or not. Okay, different question, because I did look at all the statements, and the withdrawals are just $5,000 at a time, maybe twice a month. So it doesn't mount up to $50,000 very quickly. Is that a fair reading from your end? He's got a lot of money coming in and out, but only a max of about $10,000 a month is coming out in cash. Is that a fair reading? That is a fair reading. There certainly was never an accounting provided that got to $50,000. There were bank statements from the last eight months, and that's how long it took to show that there had been that much in withdrawals. But there was certainly no affirmative evidence put forward to show that $50,000 is what he had at that time, or if I could, just what had happened with the money that had been withdrawn. What is the explanation for this picture, which shows evidence that is unconnected with this case, and it was actually submitted, I guess, to the prosecutor? But what's the explanation of how the police put matters that had nothing to do with the defendant in a photograph and then submitted it for prosecution? Yes, Your Honor, I can provide the answer to that. So as you know, first of all, this case was brought three years and three months after it actually happened, so a lot of time had passed. But the officer, I believe it was Dolek in his deposition. I believe that's where the testimony came from. But at the end of the night, it was common for this unit to take a photograph of everything that had been confiscated that night from their different stops. And what happened is this—what he believes is that this photograph was probably the photograph from everything that happened that night. But again, this lawsuit was brought three years and three months after the stop. He wasn't deposed until much after that, so we're talking about his recollection from five years prior. Now what I'll tell you in terms of what was provided to the prosecution, they were provided with copies of all the citations that were written up, that listed there were no gun charges related to Mr. Codrington. So, I mean, the prosecutor knew that he wasn't being charged with firearms and certainly knew that he wasn't being charged with any of the firearms that were not confiscated from his vehicle. And was it submitted to the grand jury also, the photo? The photo? Your Honor, I'm not able to answer that question. I'm sorry. I thought the answer was yes, but we'll see. I believe it was, but I can't say definitively. All right. I can see you're out of time. Any further questions? Judge Boggs? Judge Nel-Baden? Thank you, both. All right. Thank you for your argument. Three minutes rebuttal. Thank you, Your Honor. Judge Boggs, we don't have grand jury materials in the record here. We know that the photograph was submitted to the court. That's Officer Dolek's testimony and given to the prosecuting attorney, but I can't say what capacity the photo was received by the court. There's a lot of record questions that the court had for my friend on the other side. I think he said this, but just in case it's not clear, Codrington's deposition wasn't presented to the district court in his response brief to the summary judgment papers. In the criminal court- So it was attached? Yes. Okay. But were there citations to it in the summary judgment brief, or was it just, hey, go look at the deposition? I don't believe there are specific citations to the deposition. I mean, I guess I'm curious about the $50,000. So you can argue in your summary judgment, hey, he said there was $50,000, but I mean, usually you would have a citation. So there's also an affidavit from Mr. Codrington that's sent to the criminal court that said he was missing money, didn't get all his money back. That was presented to the district court as part of his certified criminal court record. That was with the withdrawal receipts? Yes. Does the affidavit have the $50,000 number in it? Yes, I believe so. And in the complaint, I quickly couldn't find the exact number, $50,000, but it says he alleges that he was missing at least $18,000. So this court's review of the record is plenary, so we would encourage the court to take the record as a whole. Going back to the meth, the discovery of the meth in the police car, they argue that, yes, he searched three times, but there's no way the three searches would have found the meth. How do you respond to that? That sounds like a plausible inference that a jury could make, and a jury could also make the inference that they would have found the meth. I think that's such a close call of when you're searching for someone's person, what are you liable to find? So that's how I'd respond to that. Is there deposition testimony about what kind of search it was and what they did for the procedure? The details of how exactly they searched him, I don't think there is deposition testimony on that. My friend, as I briefly said, he should have asked for his money in the criminal court. He did at the very end of the criminal case, but I'd also argue that the forfeiture statutes under Kentucky that we cite to make property not subject to ruplevin. He has to work through forfeiture proceedings which weren't brought here. And I'll just close by saying I believe I heard my friend say that the district court recited the facts that she was weighing, I think was the exact quote that I heard, and so I think that exactly is our point. The district court was weighing the facts here. So I hope I captured the quote exactly, but we agree that the district court was weighing the facts. If there are no other questions, I thank you, Your Honors. All right. Thank you for your arguments. The case will be submitted.